**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose Alberto C. D.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 26-cv-3566 (KMM/LIB)

**ORDER**

---

This matter is before the Court on a Motion for a Temporary Restraining Order (ECF 10) and the Petition for a Writ of Habeas Corpus (ECF 1) filed by Petitioner Jose Alberto C.D.[1] As explained below, the motion for a temporary restraining order is denied because Jose C.D. has failed to demonstrate that he is likely to succeed on the merits. That same conclusion requires the Court to vacate its August 27, 2026 Order (ECF 14) precluding Petitioner's removal from the United States so that the Court could decide the issues raised by his emergency motion. Finally, because the Court finds Jose C.D. cannot prevail on his claims, his petition is denied and this case is dismissed.

---

[1] The Court refers to Petitioner using his first name and last initials (e.g., Mr. C.D. or Jose C.D.) in accordance with a policy in immigration-related cases in the District of Minnesota.

## BACKGROUND[2]

Jose C.D. first came to the United States in 2013, and he was swiftly encountered by Border Patrol. He received expedited removal and was repatriated to Mexico on July 8, 2013. He returned at some point prior to 2016 and settled in Minnesota.

In 2016, Jose C.D. was the victim of a brutal assault. Following his assault, with the needed certification from the Minneapolis police, Jose C.D. applied for a U-visa in 2017. A U-visa allows persons who have been victims of certain crimes and who meet other criteria to remain in the United States lawfully. 8 U.S.C. § 1101(a)(15)(U)(i). Processing of U-Visa applications is seriously delayed due to the large number of applicants, and even when applications have been provisionally approved, only 10,000 such visas can be issued each year. (ECF 1, ¶¶ 47–49) This causes a significant backlog, so applicants are afforded various interim statuses while they wait for approval of their applications or issuance of their visas. In 2022, Jose C.D. was afforded "a bona fide determination" related to his pending application and was granted some form of deferred

[2] Although the documentary record is not complete, it appears that the parties mostly agree about the relevant facts. The Court describes them in summary form, given the expedited nature of this ruling. This recitation of facts is drawn from the Petition (ECF 1), and from the Respondent's Response and supporting exhibits. (ECF 6; ECF 7) Jose C.D. has not provided documentation to support certain allegations, including that he is the beneficiary of deferred action, that he has received a U-Visa "bona fide determination," that he has a pending U-visa application, or that he has a work authorization that was renewed earlier this year and does not expire until 2030. Because Respondents do not dispute any of these assertions, the Court will accept them as true. While the Court understands that documents are at times difficult to come by when a noncitizen is in custody, counsel is advised that it is essential to submit such documents when they are available. Counsel's reference to specific dates in the Petition (e.g., ECF 1, ¶ 4) suggests that at least some documents were available when the Petition was being prepared.

action on removal.[3] The deferred action was extended in February of 2026, and it remains in effect until February 24, 2030. Jose C.D. also has a work authorization covering the same period.

Jose C.D. has had several contacts with the criminal justice system since his arrival in the U.S., though he has no felony convictions or charges. In 2018 he was arrested for DUI, but he was released from police custody before ICE could serve a reinstated removal order. That arrest led to a conviction. Jose C.D. also has two more recent pending cases: one for driving under the influence, and one for not having an ignition-interlock device.

Jose C.D. runs his own roofing company in Minnesota and employs several people. He financially supports his family back in Mexico. He is also active in his faith community.

On August 5, 2026, Jose C.D. was arrested by the Minnesota State Patrol for failure to have an ignition-interlock device on his car, which is presumably a requirement of his pending second DUI. The next day he was taken into ICE custody pursuant to an I-200 administrative warrant. He remains in ICE custody today. Jose C.D. describes the stress and hardship his detention is causing him, his employees, and his family in Mexico.

---

[3] The Court has not seen the documents granting Jose C.D.'s deferred action or his employment authorization, which might shed light on the statutory or regulatory basis for whatever status he holds. But it appears that Jose C.D. is referring to a policy implemented by USCIS in their policy manual in 2021, that sets out the "bona fide determination" process, referred to as BFD. See U.S. Citizenship & Immig. Servs., Policy Manual, Vol. 3, Part C, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited July 27, 2025) [https://perma.cc/NA7Z-Y7TH] [hereinafter U-Visa BFD Policy]. The policy manual repeatedly refers to BFD status as an act of discretion.

The Department of Homeland Security (DHS) has now reinstated Jose C.D.'s prior order of removal, and Respondents submitted an I-871 Notice of Intent to Reinstate Prior Order in the record. (ECF 7-4) Mr. C.D. is being held pursuant to 8 U.S.C. § 1231(a)(2)(A), which requires DHS to detain an individual who has been ordered removed during a 90-day "removal period" after a removal order becomes final.[4]

On August 7, 2026, Jose C.D. filed a Petition for a Writ of Habeas Corpus challenging his detention on a variety of grounds. (ECF 1) He alleges that he cannot be detained because he is a member of a class certified by a California District Court in *Immigration Center for Women & Children v. Noem*, 351 F.R.D. 324 (C.D. Cal. May 20, 2026) [herafter "*ICWC*"], which prevents his detention; that his deferred action cannot be revoked without due process; that such revocation violates his substantive due process rights; and that the alleged disregard of his deferred action status violates the *Accardi*[5] doctrine. He also argues that his deferred action status means that his removal is not "reasonably foreseeable," so his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). At bottom, given that he has a final order of removal, all of Jose C.D.'s arguments rely on the theory that USCIS cannot remove him due to his deferred action status, or at least that they cannot do so without further proceedings.

The government opposes relief. Respondents disagree that Jose C.D.'s status as a member of the *ICWC* class has any effect on this Court, and they argue that *Zadvydas* is

[4] Section 1231 refers to the exercise of detention authority by the Attorney General of the United States, but that authority now resides in the Secretary of the Department of Homeland Security.

[5] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

inapposite because Petitioner has not been in custody long enough to fall within its ambit. Respondents' overarching argument regarding the merits of Jose C.D.'s petition is that his deferred-action status does not afford him any protection from removal because it was, at bottom, an act of nonreviewable prosecutorial discretion by USCIS that does not preclude removal.

Respondents recently notified the Court of their intention to move Jose C.D. to Texas. (ECF 9) It appears this might be in preparation for his removal to Mexico, though there is no evidence to that effect before the Court. In response, on August 27, 2026, Jose C.D. filed a Motion for a Temporary Restraining Order. (ECF 10) He asked the Court to enjoin his transfer out of the District of Minnesota, prohibit his removal from the United States, and Order his immediate release. The government opposes the request for the same reasons they oppose the Petition itself. (ECF 13; ECF 6) The Court granted the TRO in part, precluding Respondents from removing Jose C.D. from the United States until the Court had a chance to review the briefing in this matter. The Court has now done so.

**DISCUSSION**

To obtain either a temporary restraining order or a preliminary injunction, Jose C.D. must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, that the balance of equities weighs in his favor, and that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Tumey .v Mycroft AI, Inc.*, 27 F.4th 657, 665–66 (8th Cir. 2022) (explaining that the "standard for analyzing a motion for a

temporary restraining order is the same as a motion for a preliminary injunction" but that they differ in terms of how long a TRO can last and the notice required for a preliminary injunction). Jose C.D. may be entitled to a writ of habeas corpus if he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition extends to case involving immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

Ultimately, Jose C.D.'s motion for a TRO and his habeas petition fail on the merits. The Court finds that Jose C.D.'s status as a person with deferred-action who has nonetheless been ordered removed does not support the relief he seeks. Jose C.D. points to no statute or regulation which supports his claim that Respondents cannot remove him because of his deferred-action status, and the authority he does cite does not support his claim. Therefore, on the facts and the record before the Court, there is no basis to enjoin removal. The Court further finds that, at this time, there is no basis to order his release.

Before turning to the merits, the Court notes that Respondents do not contest the Court's jurisdiction to consider any of Jose C.D.'s claims. However, in at least one similar case in this District, a court concluded it lacked jurisdiction pursuant to 8 U.S.C. §1252(g). *See Domingo M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW), Doc. 24 at 9–21 (D. Minn. Aug. 1, 2025) (determining there is no jurisdiction to address a similar U-visa

deferred-action claim). Section 1252(g) provides, in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Other courts have considered the issue and decided to the contrary. *ICWC*, 351 F.R.D. at 359–61. And still others have assumed jurisdiction without comment. *Carlos E. v.* Blanche, No. 26-cv-1618 (LMP/DJF), 2026 WL 2150391 (D. Minn. July 27, 2026) (considering whether the *ICWC* class action decision required post-judgment relief in similar case without exploring the Court's jurisdiction). The Court observes that the Eighth Circuit's decision in *Jama v. Immigration & Naturalization Services*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd,* 543 U.S. 335 (2005), makes the impact of § 1252(g) on this case far more complex than it might appear at first blush. However, because the Court ultimately declines to grant relief in this case it will assume that it has jurisdiction over all of Jose C.D.'s claims.

Due to the urgent nature of the issue before the Court, it will not restate at length the relevant regulatory and statutory scheme that governs the questions before it. At bottom, the Court must answer three questions:

1. Is the Court bound by the decision of the United States District Court for the Central District of California in *ICWC*, such that the government is precluded from removing Jose C.D. and must instead release him?

2. Does Jose C.D.'s status as a recipient of deferred action status due to his pending U-visa application require either an injunction on his removal or his release?

3. Does his continuing detention violate the rules set forth in *Zadvydas*?

The answer to each of these questions is no.

**A. *ICWC* and the Policies Related to U-Visa Applicants**

In *ICWC*, the court considered the impact of a January 2025 ICE policy related to enforcement actions against U-visa applicants and others with pending applications for similar status in the United States. *ICWC*, 351 F.R.D. 324. In essence, prior to 2025, Immigration and Customs Enforcement (ICE) operated under a variety of policies that "generally required ICE to refrain from pursuing removal against persons with pending … U-visa petitions." *Id.* at 353. For instance, a 2011 Policy counseled that "in the absence of 'serious adverse factors'" ICE should generally exercise discretion in favor of such applicants in areas like release from detention and deferral or staying of removal orders. *Id.* A 2021 Directive reiterated and expanded upon these principles, advising that ICE should seek expedited processing of visa applications for people in custody, and generally should issue stays of removal orders. *Id.*

In 2025, however, the government issued a new policy, described as 2025 Guidance. This Guidance expressly "rescinded and superseded" the prior policies, eliminating the presumption of protection for applicants for U-visas and similar statuses. *Id.* at 350. Relevant to Jose C.D.'s case, the ICWC court found that the new guidance amounts to a "de facto revocation policy" whereby people with deferred status are nonetheless subject to enforcement actions including removal. *Id.* at 348–49, 386.

The *ICWC* court considered numerous challenges to the 2025 Guidance in the context of a Motion for Preliminary Injunction, so its conclusions were necessarily preliminary. But, as relevant to Jose C.D.'s situation, the court concluded that the 2025

Guidance likely violates both the APA and the *Accardi* doctrine. *Id*. at 381–82, 386–89. The *ICWC* court also certified several classes of people impacted by the new policies, including a class of noncitizens with deferred action related to a pending U-visa petition that ICE is nonetheless detaining or removing. *Id*. at 396.

The *ICWC* court determined that it could not issue injunctive relief pursuant to 8 U.S.C. § 1252(f)(1). That provision specifies that "regardless of the nature of the action or claim," no court aside from the Supreme Court can "enjoin or restrain" the operation of provisions of the Immigration and Naturalization Act (including provisions related to removal) "other than with respect to the application of such provisions to an individual alien." *Id.* at 365 (quoting 8 U.S.C. § 1252(f)(1)). Simply put, district courts cannot issue class-wide injunctions that prohibit removal. However, the *ICWC* court instead issued class-wide stays of the 2025 Guidance and the de facto revocation policy as to the certified classes, and then granted individual injunctive relief to the individual plaintiffs. *Id.* at 396.

The class-action decision from *ICWC* does not control the outcome here. First, this Court has serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case. As the Supreme Court has held, 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). And this Court agrees with Respondents here that the *ICWC* court's description of the action it took as a stay rather than an injunction does not evade

§ 1252(f)(1)'s jurisdictional bar. The *Aleman Gonzalez* Court, citing dictionary definitions, observed that "'to restrain' means to 'check, hold back, or prevent (a person or thing) from some course of action.'" *Id.* at 549. It is difficult to credit that taking an action which halts something from going into effect does not "enjoin or restrain" it, so long as that action is styled a "stay."[6]

But more critically, even if the stay of the 2025 Guidance is effective and applies to Jose C.D., it does not require a ruling in Mr. C.D.'s favor. As explored more fully below, Jose C.D.'s claim would also fail under the 2011 and 2021 policies that preceded the 2025 Guidance.

Ultimately, the Court concludes that *ICWC* does not require the Court to issue a writ of habeas corpus prohibiting Mr. C.D.'s removal or ordering his release from custody.

**B. Prosecutorial Discretion and the Earlier Policies**

Although Jose C.D. was afforded some form of deferred action due to his pending U-visa, that status does not prevent Respondents from enforcing his removal order.[7] He

[6] It bears mentioning that, although Respondents persuasively argue that the *ICWC* court exceeded its jurisdiction when it stayed the 2025 Guidance, it does not point to any decision from any court declining to follow *ICWC* on this basis. Though the stay from *ICWC* is on appeal to the Ninth Circuit, the operation of those orders has not been stayed by either the district court or the Court of Appeals. And this Court is uncertain that it has the power to disregard a stay entered by a sister court when that stay is still in effect, even if this Court might have reached a different decision.

[7] Jose C.D. does not allege that he has applied for an administrative stay of removal pursuant to 8 U.S.C. § 1227(d)(1), which affords more robust protections to noncitizens with pending U-visa petitions. Although such administrative stays are available by statute and preclude removal when they are in effect (ECF, ¶ 45), they are different from the "bona fide determination" Jose C.D. received. (ECF 1, ¶¶ 48–51)

points to neither a statute nor a regulation that prevents his removal, but instead relies upon ICE's 2011 Policy and the 2021 Directive to support his position. (ECF 1, ¶¶ 57-59) And he argues that the 2025 Guidance rescinding those prior policies is invalid for a variety of reasons. For two overarching reasons, the Court disagrees with Jose C.D. that he cannot be removed from the United States because previous ICE policies prevented it.

***Prosecutorial Discretion***

First, the Court finds that, at bottom, deferred action like that Jose C.D. invokes is an act of prosecutorial discretion that provides no basis for this Court to enjoin removal. As the court in *Eliseo D.C. v. Blanche* explained, "[d]eferred action is ordinarily understood to be an act of 'prosecutorial discretion.'" No. 26-cv-2282 (ECT/SGE), Doc. 12 at 17 (D. Minn. June 29, 2026). In *Johnson v. INS*, the Seventh Circuit considered a petitioner's claim that the immigration courts erred when they declined to grant him a waiver of removal under a particular statutory provision, INA § 212(c). The petitioner analogized the status he was denied in that case to deferred action granted in other similar cases and said that the two types of relief had to be applied consistently to avoid equal protection problems. The Seventh Circuit disagreed that the § 212(c)waiver and deferred action were alike and had to be awarded consistently. "Deferred action status is granted as a matter of prosecutorial discretion; such authority has not been delegated to immigration judges or to the Board." *Johnson v. I.N.S.*, 962 F.2d 574, 579 (7th Cir. 1992).

In *Domingo M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW), Doc. 24 (D. Minn. Aug. 1, 2025), Judge Laura Provinzino cited a 2007 Interim Rule related to the U-visa that said

the same: "[d]eferred action is 'an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen's] case being made a lower priority for removal" but "does not confer any immigration status upon a[] [noncitizen]." *Id.* at 5 n.3 (quoting U-Visa Interim Rule at 53015). In fact, the 2011 and 2021 ICE policies Jose C.D. invokes in support of his argument describe deferred prosecution for U-visa holders as exercises of "prosecutorial discretion."[8]

Because the type of deferred action at issue in this case is an act of prosecutorial discretion, Respondents argue that it does not give rise to a liberty interest or an actionable claim on Jose C.D.'s part.[9] After careful consideration, the Court agrees. Again, Judge Tostrud's analysis in *Eliseo D.* is instructive. There, the court observed that the Eighth Circuit has characterized prosecutorial discretion as a type of agency action that is not bound by the *Accardi* doctrine. *Eliseo D.*, Doc. 12 at 11–12 (discussing *United*

[8] *See* ICE Policy Statement 10076.1, Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs at 1 (Jun. 17, 2011), https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf ("This memorandum sets forth agency policy regarding the exercise of prosecutorial discretion in removal cases involving the victims and witnesses of crime "); ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims at 1 (Dec. 2, 2021), https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf ("ICE will exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by noncitizen crime victims.").

[9] The Court disagrees with Jose C.D.'s suggestion that *Reno v. Am.-Arab Discrimination Comm.*, 525 U.S. 471 (1999) holds that deferred action means that a person cannot be removed. (ECF 8 at 6 ("The Supreme Court has already described what a grant of deferred action means: it means 'no action will thereafter be taken to proceeding against an apparently deportable [non-citizen], even on grounds normally regarded as aggravated." (quoting *AADC*, 525 U.S. at 484)) The cited language from *AADC* is from a discussion in that case explaining what deferred action is, not setting forth an entitlement for that status to continue.

*v. Lee*, 274 F.3d 485, 492–93 (8th Cir. 2001)); *see also United States v. Halls*, 40 F.3d 275, 278 n.1 (8th Cir. 1994) (stating the U.S. Department of Justice's policy not to further prosecute someone already subject to a state prosecution was "an internal policy," and therefore it was "not enforceable against the government").

The Court acknowledges that these are decisions from the criminal arena that map imperfectly onto the situation before the court, which is civil in nature. But they are nonetheless persuasive. Petitioner offers no real answer to the import of the *Lee* decision, stating only that it doesn't apply because "deferred action is individualized, affirmative, and implicates due process interest." (ECF 8, p. 14) However, the same words can be used to describe the exercise of prosecutorial discretion in the criminal context. And the cases relied upon primarily by Petitioner in support of his reading that "deferred action" confers some status or protection, such as *Sepulveda Ayala v. Bondi*, No. 2:25-cv-1063-JNW-TLF, 2025 WL 2084400 (W.D. Wash. July 24, 2025), arise in the Ninth Circuit where *Lee* doesn't control.[10]

***The Earlier ICE Policies***

The Court also finds that ICE's 2011 Policy and the 2021 Directives do not support Jose C.D.'s position, even if they remained in effect. As Judge Provinzino explained in *Carlos E.V. v. Blanche*, No. 26-cv-1618 (LMP/DJF), 2026 WL 2150391 (D. Minn. July 27, 2026), the 2021 Directive allowed immigration enforcement against U-

[10] The Court observes that its assessment is limited to the type of deferred action Mr. C.D. has received, based on his bona-fide-determination status. It may be that there are other types of deferred action that give rise to more robust procedural protections, which would preclude removal or other enforcement efforts.

visa petitioners in "exceptional circumstances." *Id.* at *2 (quoting *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005)).[11] Jose C.D.'s suggestion that, but for the 2025 Guidance and its de facto revocation policy, he could not be removed is unpersuasive. The government could point to circumstances in this record that made it decide to remove Jose C.D. despite the earlier grant of deferred action, including his two recent arrests or his previous removal. Whether Jose C.D. agrees that those circumstances should justify a change of direction from USCIS is irrelevant to how ICE might choose to weigh them.

The Court notes that Jose C.D.'s status as a recipient of a bona fide determination of deferred action is distinct from having received any official stay of removal pursuant to 8 U.S.C. § 1227(d)(1) or any other provision – such a status would likely entitle Jose C.D. to more robust procedural protections prior to revocation. Although the Court has not seen any records related to Jose C.D.'s deferred action, in *Domingo M.M.* Judge Provinzino quotes extensively from a BFD notice issued in 2024. That document describes the status as "a favorable exercise of discretion to receive employment authorization and deferred action," and further states that "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal." *Domingo M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW), Doc. 24 at 7 (D. Minn. Aug. 1, 2025) (quoting the petitioner's BFD notice). Nothing in this description or in the previous ICE policies suggests that ICE cannot remove Jose C.D. because of his BFD deferred action status.

[11] The 2021 Directive may be found at https://www.ice.gov/doclib/foia/pulicy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf [https://perma.cc/EK4S-9USH].

Finally, although Jose C.D. alleges that he is entitled to greater procedural protections before his BFD status can be revoked, he never explains what that process requires. He doesn't identify any regulations or policies from any time in the U-visa program's history that spell out what ICE should do when it intends to revoke a deferred action status or deport a person despite that status, but simply asserts that his status has not been revoked. But it cannot be that such an exercise of prosecutorial discretion can never be undone. Instead, the lack of regulations, policies, or guidance suggests that when the agency decides to take enforcement action against deferred action status granted under the BFD program, it may do so.

In sum, because his deferred action is ultimately a matter of prosecutorial discretion, Jose C.D. has failed to show that he is entitled to a writ of habeas corpus, and the Court denies his habeas petition on this basis.

**C. *Zadvydas v. Davis***

Finally, the Court turns to Jose C.D.'s argument that the Supreme Court's holding from *Zadvydas v. Davis*, 533 U.S. 678 (2001), requires his immediate release. *Zadvydas* considered the constitutional implications of 8 U.S.C. § 1231(a)(6), which authorizes the potentially indefinite detention of a noncitizen who has been ordered removed after detention during the 90-day removal period established by § 1231(a)(2)(A). Because the risk of indefinite detention raised serious due process concerns, the Court held that detention is presumptively reasonable for a period of six months after a removal order becomes final. *Id.* at 701. However, after six months have passed, if an alien provides good reason to believe there is "no significant likelihood of removal in the reasonably

foreseeable future," to keep the individual in custody, the government is required to rebut that showing, and its failure to do so may require the person's release. *Id.* Jose C.D. argues that he cannot be removed due to his deferred action status, and therefore his detention is sure to violate the presumptive six-month rule of *Zadvydas*.

The Court disagrees that *Zadvydas* supports Jose C.D.'s release at this time. He has been in custody pursuant to his newly reinstated Order of Removal for less than a month. This is nowhere near the time frame afforded by statute under 8 U.S.C. § 1231(a) and blessed by the Supreme Court as presumptively reasonable. If, in fact, ICE cannot deport Jose C.D. due to his deferred action status or some other reason, then he can file a new petition pursuant to *Zadvydas*. Accordingly, to the extent Jose C.D. asserts a claim under *Zadvydas*, that claim is dismissed without prejudice.

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Jose C.D.'s Motion for a Temporary Restraining Order (ECF 10) is **DENIED**.
2. The Court's August 27, 2026 Order (ECF 14) is **VACATED**.
3. The Petition for a Writ of Habeas Corpus (ECF 1) is **DENIED**.
4. This matter is **DISMISSED**.

**Let Judgment be entered accordingly**.

Date: September 2, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge